UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC, | No.  2:22-cv-02034-DAD-CKD |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| AA 110 d/b/a DIXON SMOKE SHOP, et al., | |
| Defendants. | |

Plaintiff, GS Holistic, LLC, moves the court for default judgment against the two named defendants, AA110 doing business as Dixon Smoke Shop ("Dixon Smoke Shop") and Sayed Mehdizadeh. (ECF No. 10.) Through this motion, plaintiff seeks a default judgment against defendants for statutory damages in the amount of $150,000.00, costs of $866.20, and injunctive relief on claims of trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. 1051 et seq. Defendants have neither appeared nor opposed the motion. The court previously ordered this motion submitted without appearance and argument pursuant to Local Rule 230(g) (ECF No. 15.) For the reasons set forth below, the undersigned recommends the motion for entry of default judgment be granted in part and denied in part, with statutory damages pursuant to 15 U.S.C. § 1117 awarded in the amount of $5,000, and costs awarded in the amount of $532.00.

1

1    **I. BACKGROUND**

2        Since 2020, plaintiff has marketed and sold glass infusers and accessories using the well-

3    known trademark "Stundenglass." (ECF No. 1, ¶ 8.) Plaintiff is the owner of three federally

4    registered trademarks in association with these goods:

5        a.  U.S. Trademark Registration Number 6,633,884 for the standard character mark

6            "Stündenglass" in association with goods further identified in international class 011;

7        b.  U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S"

8            and its logo in association with goods further identified in international class 034,

9        c.  U.S. Trademark Registration Number 6,174,291 for the standard character mark

10           "Stündenglass" in association with goods further identified in international class 034.

11   (Id., ¶ 11.)

12       Plaintiff has used the Stündenglass trademarks in commerce continuously since 2020 in

13   connection with the manufacturing of glass infusers and accessories. (ECF No. 1, ¶ 13.) Plaintiff

14   has expended substantial time, money, and other resources in developing, advertising, and

15   promoting its trademarks, resulting in wide public recognition of its products as being high-

16   quality. (Id., ¶¶ 13-21.) Plaintiff's products have a higher sales value than other similar products

17   and have been targeted by counterfeiters. (Id., ¶¶ 21-23.)

18       Relevant to this case, plaintiff's investigator purchased "a Glass Infuser with a

19   Stündenglass Mark affixed to it" for $269.20 from Dixon Smoke Shop, and, upon inspection,

20   determined it was counterfeit. (ECF No. 1, ¶¶ 29-31.) Plaintiffs never authorized defendants to

21   sell any merchandise bearing any of the Stündenglass marks. (Id., ¶ 33.)

22       Plaintiff initiated this action on November 9, 2022, asserting claims for (1) Federal

23   Trademark Counterfeiting and Infringement, (15 U.S.C. § 1114), and (2) Federal False

24   Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)). A return of service filed on

25   February 3, 2023 (ECF No. 4), indicates defendant Mehdizadeh was personally served by

26   delivering a copy of the summons and the complaint to Mehdizadeh on February 1, 2023. See

27   Fed. R. Civ. P. 4(e)(2)(A). Another return of service filed on February 3, 2023 (ECF No. 8),

28   indicates defendant Dixon Smoke Shop was served on February 10, 2023, by delivery to

1   defendant Mehdizadeh. See Fed. R. Civ. P. 4(h)(1)(b).[1]

2          Pursuant to plaintiff's request, the Clerk entered default as to both defendants on March 7,

3   2023. (ECF No. 8.) Plaintiff's motion for default judgment filed on June 22, 2023 (ECF No. 10),

4   is now before the court.

5   **II. LEGAL STANDARDS**

6          Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

7   against whom a judgment for affirmative relief is sought if that party fails to plead or otherwise

8   defend against the action. See Fed. R. Civ. P. 55(a). The decision to grant or deny an application

9   for default judgment lies within the sound discretion of the district court. Aldabe v. Aldabe, 616

10  F.2d 1089, 1092 (9th Cir. 1980).

11         As a general rule, once default is entered, well-pleaded factual allegations in the operative

12  complaint are taken as true except for the allegations relating to damages. TeleVideo Sys., Inc. v.

13  Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

14  Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

15  285 F.3d 899, 906 (9th Cir. 2002). "[N]ecessary facts not contained in the pleadings, and claims

16  which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am.,

17  980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the court may require

18  the moving party to produce evidence in support of the emotion for default judgment. See

19  TeleVideo Sys., Inc., 826 F.2d at 917-18.

20         Default judgments are ordinarily disfavored. Eitel v. McCool, 782 F.2d 1470, 1472 (9th

21  Cir. 1986). In making the determination whether to grant a motion for default judgment, the court

22  considers the following factors:

23              (1) the possibility of prejudice to the plaintiff, (2) the merits of
                plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
24              the sum of money at stake in the action; (5) the possibility of a dispute
                concerning material facts; (6) whether the default was due to
25

26  ――――――――――
    [1] Both the Federal Rules and California law provide for service on a corporation by delivery to an
    agent "authorized" to receive service of process for the corporation. Fed. R. Civ. P. (h)(1)(b); Cal.
27  Civ. Proc. Code § 416.10(a)-(b). Here, the process server's note states "Stayed [sic]
    Mehdizadeh… indicated they were the person to accept..." (ECF No. 5 at 1.) Thus, on the record
28  currently before the court, it appears defendant Dixon Smoke Shop was properly served.

excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

## III.  DISCUSSION

### A.  Eitel Factors

#### 1.  Possibility of Prejudice to Plaintiff

The court considers whether plaintiff would suffer prejudice if default judgment is not entered. Such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff filed suit on November 9, 2022, and defendants have failed to respond to plaintiff's complaint or otherwise put forth a defense in this action. The present litigation cannot move forward, leaving plaintiff no recourse other than to seek a default judgment. Accordingly, the first factor weighs in favor of entering default judgment.

#### 2.  Merits of the Substantive Claim and the Sufficiency of the Complaint

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together due to the relatedness of the inquiries. The court considers whether the allegations in the complaint are sufficient to state a claim on which plaintiff may recover. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Plaintiff brings two claims: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114 et seq., and (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125 et seq. (ECF No. 1 at ¶¶ 53-70.) Courts have noted there is "no material difference in the law governing relief" for these claims. Menendez v. Saks & Co., 485 F.2d 1355, 1375 n.22 (2nd Cir. 1973), rev'd sub nom. on other grounds, Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682 (1976); Walter v. Mattel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000) ("The test for false designation under the Lanham Act, as well as the… statutory unfair competition claims, is whether there was a 'likelihood of confusion.'") (citation omitted), modified on other grounds by Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625 (9th Cir. 2005).

////

4

1    To state a claim for unfair competition or trademark infringement under the Lanham Act,

2    the complaint must allege the plaintiff: "(1) ... has a protectible ownership interest in the mark;

3    and (2) the defendant's use of the mark is likely to cause consumer confusion…." Department of

4    Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th

5    Cir. 2006). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in

6    the marketplace is likely to be confused as to the origin of the good or service bearing one of the

7    marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir.

8    1998); see AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) ("Sleekcraft")

9    (setting forth eight factors of consideration) abrogated on other grounds by Mattel, Inc. v.

10    Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003). The test set forth in Sleekcraft

11    is pliant: some factors are much more important than others, and the relative importance of each

12    is case-specific. Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1054 (9th

13    Cir. 1999)) (noting it is often possible to determine whether there is likelihood of confusion after

14    considering a subset of factors).

15    Pertinent here, federal registration of a trademark is prima facie evidence of ownership of

16    a valid trademark. 15 U.S.C. § 1057(b); Brookfield Communications, 174 F.3d at 1047. The

17    complaint's allegations adequately allege a protectible interest. The remaining element is the

18    issue of confusion.

19    The complaint alleges defendant, Dixon Smoke Shop, has distributed, provided, marketed,

20    advertised, promoted, offered for sale, and sold glass infusers and water pipes with marks that are

21    confusingly identical or similar to the Stündenglass marks. (ECF No. 1, ¶¶ 38-40.) The complaint

22    alleges defendant Mehdizadeh owned, managed, and/or operated Dixon Smoke Shop, and

23    authorized, directed, and/or participated in the offer for sale of the counterfeit goods at issue. (Id.,

24    ¶¶ 7, 32.) Plaintiff's investigator purchased a glass infuser with a Stündenglass mark affixed to it

25    at Dixon Smoke Shop and determined it to be counterfeit. (Id., ¶¶ 29-30.) The complaint's

26    allegations establish the strength of the Stündenglass marks, similarity of the mark affixed to the

27    counterfeit product purchased, and proximity of the alleged counterfeit goods, sufficient to show

28    a likelihood of confusion. See JUUL Labs, Inc. v. Chou, 557 F. Supp. 3d 1041, 1052 (C.D. Cal.

5

2021) ("[C]ounterfeit marks are inherently confusing."); <u>Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.</u>, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a court need only determine that the items at issue are counterfeit and that the defendant distributed, offered for sale, or sold the items."). The complaint states cognizable claims for trademark infringement and unfair competition under the Lanham Act. The <u>Eitel</u> factors considering the merits of the claim and the sufficiency of the complaint weigh in favor of granting the default judgment.

### 3. The Sum of Money at Stake

Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1176-77; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500 (C.D. Cal. 2003). This requires the court to assess whether recovery sought is proportional to the harm caused by defendants' conduct. <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 998, 1012 (C.D. Cal. 2014) ("Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct"). Here, plaintiff seeks statutory damages in the amount of $150,000.00 and costs in the amount of $866.20.

The award sought is substantial. The remedies analysis set forth below recommends that a different amount of statutory damages is more proportional to the seriousness of the defendants' conduct in this case. Nevertheless, the requested statutory damages and costs are not so unreasonable in relation to the conduct alleged in the complaint as to weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default. Thus, the court finds no likelihood that any genuine issue of material fact exists. <u>See, e.g.</u>, <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); <u>accord</u> <u>Philip Morris USA, Inc.</u>, 219 F.R.D. at 500; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. This factor

6

1    favors the entry of a default judgment.

2           **5.   Whether the Default Was Due to Excusable Neglect**

3           The record contains no indication that defendants' default was due to excusable neglect.

4    Due process requires that interested parties be given notice of the pendency of the action and be

5    afforded an opportunity to present their objections before a final judgment is rendered. <u>Mullane v.</u>

6    <u>Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950). While there is always a possibility

7    that a defendant might appear and claim excusable neglect, where the defendants "were properly

8    served with the Complaint, the notice of entry of default, as well as the papers in support of the

9    instant motion," this factor favors entry of default judgment. <u>Shanghai Automation Instrument</u>

10   <u>Co. Ltd. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). As set forth above, on the record

11   currently before the court, it appears the defendants were properly served with summons and the

12   complaint. Despite having been served with the summons and the complaint,[2] defendants have

13   failed to respond. The lack of any indication of excusable neglect favors entry of a default

14   judgment.

15          **6.   Policy Favoring Decisions on the Merits**

16          "Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782

17   F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone,

18   is not dispositive." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177 (citation omitted); <u>see also</u> <u>Craigslist,</u>

19   <u>Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Rule 55 allows a court

20   to decide a case before the merits are heard if defendant fails to appear and defend. <u>See PepsiCo,</u>

21   <u>Inc.</u>, 238 F. Supp. 2d at 1177. Although the court is cognizant of the policy in favor of decisions

22   on the merits, that policy does not, by itself, preclude the entry of default judgment.

23          **7.   Recommendation**

24          Taken together, the <u>Eitel</u> factors support granting the request for default judgment. It is

25   therefore recommended that a default judgment be entered.

26   
     _____

27   [2] In this case, there is no indication that plaintiffs served defendants with the notice of entry of
     default or the papers in support of the instant motion, but the Federal Rules of Civil Procedure did
28   not require it. <u>See</u> Fed. R. Civ. P 5(a)(2); Fed. R. Civ. P. 55(b)(2).

**B.  Remedies**

**1.  Statutory Damages**

Plaintiff's motion seeks an award of statutory damages under the Lanham Act, 15 U.S.C. § 1117(c), in the amount of $150,000.00 ($50,000 per mark). (ECF No. 10-3 at ¶ 16.) The Lanham Act authorizes awards of statutory damages, "as the court considers just" of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(1). The Lanham Act further authorizes awards of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" if the court "finds that the use of the counterfeit mark was willful[.]" Id. at § 1117(c)(2). The court has discretion to award statutory damages between the minimum and maximum, so long as they are sufficient to deter future trademark infringement. Playboy Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274-75 (9th Cir. 1982) (cautioning against permitting a situation in which "the counterfeiter escapes without suffering the economic harm necessary to serve as a deterrent to future infringing activities"); but see also Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1089 (N.D. Cal. 2014) ("While the plaintiff in a trademark infringement case is entitled to damages that will serve as a deterrent, it is not entitled to a windfall.").

In determining appropriate statutory damages to award on default judgment, district courts consider whether the amount of damages requested bears a "plausible relationship" to plaintiff's actual damages. Yelp Inc., 70 F. Supp. 3d at 1102. Here, plaintiff submits affidavits of Christopher Folkerts, plaintiff's Chief Executive Officer. (ECF No. 10-3 & 10-4.) Folkers avers that sales for Stündenglass products were approximately $9,600,000 in 2021 and would have been an estimated $38,400,000 if not for the flood of counterfeit products. (ECF No. 10-4 at ¶¶ 15-16.) This estimation is based on Folkers' industry knowledge and research showing that 3 out of every 10 products sold is a counterfeit, but otherwise there is no explanation of how it was determined. (Id.) The evidence submitted in support of the motion for default judgment does not address the quantity of counterfeit products sold by defendants, or the damages caused by defendants' conduct.

Plaintiff's request for $50,000 per mark and $150,000 total in statutory damages is not supported by the affidavit. See GS Holistic, LLC v. Alien Smoke Shop, No. 2:22-cv-05622-JLS-DFM, 2023 WL 3402589, at *3 (C.D. Cal. Mar. 17, 2023) (denying similar motion for default judgment without prejudice based, in part, on failure to show that plaintiff's requested damages were proportionate to the amount requested). However, the court keeps in mind that in default judgment cases, "the information needed to prove actual damages is within the infringers' control[.]" Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). Here, plaintiff's investigator visited Dixon Smoke Shop and purchased a single counterfeit product there. Otherwise, the complaint contains no non-conclusory allegations about defendants' infringing conduct.

The undersigned recommends an award of $5,000 as reasonable statutory damages. See, e.g., GS Holistic, LLC v. RAB 786 LLC, No. C:23-0321-JLR, 2023 WL 7329269, at *7 (W.D. Wash. Nov. 7, 2023) (awarding $5,000 in statutory damages in a similar case brought by plaintiff); GS Holistic, LLC v. Aman Awalom, No. 23-CV-00748-CRB, 2023 WL 7458857, at *1 (N.D. Cal. Oct. 21, 2023) (same); see also Sream, Inc. v. Singh, No. 1:18-cv-00987-DAD-BAM, 2018 WL 5819455, at *9 (E.D. Cal. Nov. 5, 2018) (noting "[s]tatutory damage awards by courts [under the Lanham Act] vary widely" and finding an award of $20,000 to be reasonable based upon the sale of a single counterfeit water pipe), report and recommendation adopted, No. 1:18-cv-00987 DAD-BAM, 2019 WL 2160358 (E.D. Cal. Feb. 13, 2019); GS Holistic, LLC v. Roseville Smoke n Vape Inc., No. 2:22-cv-2036-DJC-AC, 2023 WL 6279450 (E.D. Cal. Sept. 26, 2023) (awarding $25,000 per infringing mark for a total of $75,000 in statutory damages).

Plaintiff requests statutory damages for three distinct infringing marks. To this end, the complaint alleges plaintiff is the owner of three federally registered trademarks. (See ECF No. 1 at ¶ 11.) In the evidence submitted in support of the motion for default judgment, Folkers avers that on October 27, 2022, Dixon Smoke Shop sold "the fake product bearing the Stündenglass Marks…" (ECF No. 10-3, ¶ 7.) By not identifying the marks or specifying the number of marks, plaintiff fails to prove up the damages for three infringing marks. See TeleVideo Systems, 826 F.2d at 917-18. Moreover, as set forth above, the complaint alleges a sale by defendants of one

counterfeit product with a single infringing mark. (ECF No. 1, ¶ 30 ["Specifically, GS's investigator purchased a Glass Infuser with a Stündenglass Mark affixed to it, from DIXON SMOKE SHOP, for a cost of $269.20[.]"; see also id., ¶ 31 ("DIXON SMOKE SHOP sold… a Counterfeit Good with an Infringing Mark affixed to it"); see also, id., ¶¶ 27, 38 & 41 (each referring to "the Infringing Mark")). Accordingly, the recommended amount of statutory damages is for one infringing mark. See Fed. R. Civ. P. 54(c) ("[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

### 4. Costs

Under the Lanham Act, a plaintiff who establishes that a defendant has violated a trademark "shall be entitled… subject to the principles of equity, to recover … the costs of the action." 15 U.S.C. § 1117(a). Plaintiff's motion for default judgment seeks an award of costs in the amount of $866.20, consisting of the filing fee ($402.00), process server fees ($130.00), and investigation fees ($334.20). (ECF No. 10-5.) Plaintiff has not cited any authority for requesting investigation fees as costs of the action. The plain language "the costs of the action," 15 U.S.C. § 1117(a), does not appear to encompass costs incurred before the case has been filed. See generally Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012) ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized…"); Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc., 741 F.3d 955, 958 (9th Cir. 2013) (applying Taniguchi). The undersigned recommends plaintiff be awarded the filing fee and process server fees as costs of the action.

### 3. Injunctive Relief

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief, and must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

10

public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (interpreting similar language in considering a motion for permanent injunctive relief under the Patent Act). The Lanham Act provides, in the case of a motion for a permanent injunction, that a "plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a [trademark] violation." 15 U.S.C. § 1116(a).

Here, plaintiff requests a permanent injunction enjoining defendant from

> (a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy, or colorful imitation thereof;
>
> (b) Assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraphs (a) above.

(ECF No. 10 at 13-14.)

Plaintiff argues it is entitled to injunctive relief "[b]y the reasons explained in [its] Complaint and pursuant to 15 U.S.C. § 1116." (ECF No. 10 at 13.) Plaintiff's motion does not address the factors a court must consider before entering a permanent injunction. See eBay Inc., 547 U.S. at 391. Although plaintiff is entitled to a rebuttable presumption of irreparable harm, that leaves several other factors this court must consider before entering a permanent injunction. See id. Moreover, plaintiff's complaint describes the sale of one counterfeit glass infuser displaying one Stündenglass mark, but plaintiff requests a wider injunction relating to "the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof[.]" (ECF No. 10 at 14.) In addition, the injunction plaintiff seeks is broader than the injunction described in the complaint, which does not include an injunction against "[a]ssisting, aiding or attempting to assist or aid" others against performing the actions listed in part (a) of the proposed injunction. (See ECF No. 10 at 14; compare ECF No. 1, Prayer for Relief.) For all these reasons, the undersigned declines

1    to recommend that a permanent injunction be entered.

2          Plaintiff also seeks an order under 15 U.S.C. § 1118 requiring defendants to "deliver up to

3    the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers,

4    receptacles, advertisements, and other materials in their possession, custody, or control bearing

5    any of the Stündenglass Trademarks." (ECF No. 1, Prayer for Relief.) The Lanham Act

6    authorizes but does not require the court to issue an order directing the destruction of articles that

7    infringe upon a trademark. 15 U.S.C. § 1118. In this instance, the request for destruction of any

8    article "bearing any of the Stündenglass Trademarks" is not well supported by plaintiff's

9    investigator's purchase of a single glass infuser bearing a Stündenglass mark. Aside from the

10   investigator's purchase and plaintiff's citation to the statute, plaintiff has not presented any

11   argument or further evidence supporting its entitlement to this relief. (See ECF No. 10 at 14.)

12   Thus, the undersigned declines to recommend the granting of a destruction order under 15 U.S.C.

13   § 1118.

14      **IV.  CONCLUSION AND RECOMMENDATION**

15          In accordance with the above, it is HEREBY RECOMMENDED as follows:

16          1.      Plaintiff's motion for default judgment (ECF No. 10) be granted in part, and

17   statutory damages awarded to plaintiff pursuant to 15 U.S.C. § 1117 in the amount of $5,000, and

18   costs awarded in the amount of $532.00.

19          2.      The court enter judgment against the defendants, AA110 d/b/a Dixon Smoke Shop

20   and Sayed Mehdizadeh, on the plaintiff's claims of trademark infringement and unfair

21   competition under the Lanham Act.

22          3.      In all other respects, the motion for default judgment be denied.

23          These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

25   days after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties. Such a document should be captioned

27   "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

28   shall be served on all parties and filed with the court within fourteen (14) days after service of the

objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  December 7, 2023

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8.GSholi22cv2034.mdj

13